# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-929V
### Filed: April 30, 2026

|  |  |
|---|---|
| LIGIA GAIRDO,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Master Horner |

*Ramon Rodriguez, III, Sands Anderson PC, Richmond, VA, for petitioner.*
*Austin Joel Egan, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On June 28, 2018, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ("Vaccine Act"). (ECF No. 1.)  Petitioner primarily alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of her August 20, 2015 pneumococcal conjugate ("Prevnar") vaccination.  (*Id.*)  On August 22, 2024, the undersigned issued a decision denying compensation.  (ECF No. 122.)  On March 24, 2025, petitioner filed a motion seeking an award of final attorneys' fees and costs.  (ECF No. 127.)  (Prior counsel was previously awarded $15,760.36 in April of 2020 when she departed the case.  (ECF No. 46).)  Petitioner seeks $174,142.65, including $7.85 for petitioner's personal costs, $165,630.40 in fees and costs incurred by Sands Anderson P.C., and $8,504.40 in fees and costs incurred by Siri & Glimstad, LLP.  (*Id.* at 13.)  For the reasons discussed below, petitioner is awarded $82,386.02.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be to the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

### I.    Factual History

The factual history underlying petitioner's claim is discussed in detail in the decision denying compensation and will not be repeated in full.  (ECF No. 122; 2024 WL 4262961, at *4-11.)  Briefly, petitioner received the vaccination at issue at her primary care provider's office on August 20, 2015.  2024 WL 4262961, at *4 (citing Ex. 2, pp. 78-84).)  At that time, she had no specific left shoulder complaint, but was concerned that she had fibromyalgia due to back and neck pain, as well as all over muscle cramps.  *Id*. (citing Ex. 2, pp. 82-83).

Within a week of her vaccination, petitioner did report a systemic vaccine reaction to her physician (including fever, myalgia, and fatigue), as well as a local injection site reaction, diagnosed as an allergic reaction and/or cellulitis.  2024 WL 4262961, at *4 (citing Ex. 2, pp. 99-100).  Around this time, petitioner also started reporting cervical neck pain and headaches, for which she pursued physical therapy beginning in September of 2015.  *Id.* at *4-5.  Petitioner continued to seek care for a number of complaints; however, none of her medical records included any specific indication of a shoulder injury until February 14, 2017.  *Id*. at *5-6.  Moreover, at least one of her physical examinations during this period confirmed that she had full strength and full range of motion in her shoulder.  (*See, e.g.*, Ex. 3, p. 47.)

As of a February 14, 2017 orthopedic encounter, petitioner's "chief complaint is that she is having discomfort in her left arm apparently while bathing her mother who is quite infirmed and basically wheelchair bound.  She fell in the bathroom, landing on her elbow and putting a posterior lateral force through her shoulder.  She is now unable to abduct her arm even to 90 degrees without significant pain with active range of motion."  2024 WL 4262961, at *6 (quoting Ex. 2, p. 156).  Petitioner's February 14, 2017 medical records also include a handwritten intake form on which petitioner herself attributed her shoulder pain to this fall and specifically indicated that the duration of her symptoms had been "2 weeks."  (Ex. 6, p. 17.)  Thereafter, petitioner began a course of treatment specific to a left shoulder injury.

During the fact hearing, petitioner disputed the February 14, 2017 medical record in various ways, at turns denying that she fell, reasoning that she would have fallen on her right shoulder instead of the left, and contending the doctor's record was mistaken.  2024 WL 4262961, at *8 (citing Tr. 92, 141-46).  However, she ultimately conceded the fact of her fall after being confronted with her prior affidavit in which she had acknowledged the fall.  *Id*. (citing Tr. 149; Ex. 1).  Additionally, petitioner authenticated her handwritten orthopedic intake form for her February 14, 2017 encounter, in which she had attributed her left shoulder injury to the fall.  *Id*. (citing Tr. 150-53; Ex. 6, p. 17).

### II.    Procedural History

This case was originally assigned to the Special Processing Unit ("SPU") based on the allegations of the petition.  (ECF Nos. 4-5.)  However, respondent opted to

defend the case and filed his Rule 4 report in May of 2019.  (ECF No. 21.)  Respondent acknowledged that petitioner's medical records demonstrated a post-vaccination cellulitis; however, this condition did not meet the Vaccine Act's severity requirement. (*Id*. at 12.)  Based on his review of the medical records, respondent noted that petitioner had pre-existing myalgia and neck pain that would confound her SIRVA allegation.  (*Id*. at 10.)  But more significantly, petitioner's medical records explicitly documented that petitioner's shoulder pain and reduced range of motion were related to the fall she experienced in February of 2017, rather than following her August 2015 vaccination. (*Id*. at 10-11.)

Thereafter, the case was reassigned to another special master, who directed petitioner to file additional evidence, including an affidavit, regarding the onset of her symptoms.  (ECF No. 24.)  Before this could be accomplished, the case was reassigned to the undersigned and petitioner's initial counsel departed the case.  (ECF Nos. 27-28, 32.)  In connection with her departure, prior counsel filed a motion for an award of interim attorneys' fees and costs.  (ECF No. 31.)  In his response to that motion, respondent deferred to the special master as to whether there was a reasonable basis for the filing of the petition.  (ECF No. 34-1.)

In awarding interim fees, I concluded that the petition had a reasonable basis given that petitioner had filed "contemporaneous medical records from her treating physician observing her alleged initial vaccine reaction (diffuse erythema over the deltoid, and myalgia) and opining that petitioner had an allergic reaction (or local cellulitis) related to her Prevnar vaccination," as well as "a later letter by petitioner's physician relati[ing] her ongoing pain and muscle weakness to her vaccination."  (ECF No. 41, p. 3 (citing Ex. 2, pp. 100-02; Ex. 4, p. 3).)  I further cautioned that

> [P]etitioner has a complicated medical history and further record development, likely to include expert reports, will be necessary to determine what condition is ultimately at issue in this case and which, if any, of her symptoms may be related to her vaccination.  Due to the severity requirement of the Vaccine Act (§ 300aa-11(c)(1)(D)), the fact that petitioner had an immediate vaccine reaction would not be sufficient to warrant compensation unless it can be linked by preponderant evidence to sequelae lasting at least six months.  Reasonable basis can be lost as a case progresses. *R.K. v Sec'y of Health & Human Servs*., 760 Fed. Appx. 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs*., 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

(*Id*. at n. 2.)

After petitioner filed additional medical records, I held a follow up status conference in May of 2020.  (ECF No. 55.)  During the status conference, petitioner's counsel indicated that he wished to pursue a SIRVA-type shoulder injury by consulting an orthopedic expert.  However, "I advised petitioner's counsel that, upon my review of this case, the medical records do not, without more, support petitioner invoking a SIRVA

3

injury due to the post-vaccination evidence [of] cellulitis, cervical radiculopathy, and her traumatic fall." (*Id*. at 1.)  I further explained that "[i]f this case is to proceed, petitioner will need to grapple with the fact that all of these conditions and circumstances are reflected in the medical records." (*Id*. at 1-2.)  Thus,

> I cautioned petitioner that the interim attorneys' fee award payable to petitioner's prior counsel was based on a demonstration of reasonable basis at the time of filing made by only the barest of margins and that reasonable basis will be reassessed moving forward in light of the present circumstances of the case.  If counsel cannot effectively address the above concerns, he should not assume based on the prior award of interim fees that he will have a reasonable basis for his actions.

(*Id*. at 2.)

Prompted to indicate how she intended to proceed in light of the undersigned's guidance, petitioner indicated as of November 2020 that she "remains intent" on moving forward with her shoulder injury claim, and she confirmed as of March 2021 that she intended to file an expert report by an orthopedist.  (ECF Nos. 61, 66.)  Petitioner then filed an expert report by Daniel Carr, M.D.  (ECF No. 71; Ex. 23.)  Dr. Carr opined that petitioner's condition met the criteria for SIRVA.  (Ex. 23, p. 8.)  Specifically, he opined that petitioner's vaccination caused otherwise unexplained left shoulder pain and reduced range of motion additional to her injection site reaction and that this pain "led to a spiraling loss of strength and function," which ultimately precipitated her February 2017 fall.  (*Id*.)

After respondent filed a responsive expert report by Paul Cagle, M.D. (ECF Nos. 77-78; Ex. A), I held a Rule 5 conference.  (ECF No. 79.)  Explaining again that petitioner's medical records placed the onset of her shoulder pain and reduced range of motion in February of 2017 following a fall, I advised that Dr. Carr's opinion identifying a post-vaccination SIRVA was not reliably reached and his suggestion that petitioner had reduced range of motion from the time of her vaccination "does not appear accurate." (*Id*. at 1.)  However, noting the fact of petitioner's initial cellulitis-like condition, I advised that "even as I remain very skeptical of petitioner's SIRVA allegation, it may be possible that the parties could reach a litigative risk resolution of a claim for cellulitis/allergic reaction." (*Id*. at 2.)  Although petitioner requested the opportunity to file a supplemental report by Dr. Carr, I advised that I remained concerned that "in light of what the contemporaneous medical records of 2015 and 2016 reflect, Dr. Carr's assessment may ultimately rely upon petitioner's account of her history while her medical records suggest reason to doubt her credibility as a historian." (*Id*.)  Thus, I noted that a fact hearing would be more likely to be productive because "[w]hen an expert assumes facts that are not supported by a preponderance of the evidence, a finder of fact may properly reject the expert's opinion." (*Id*. at 3 (quoting *Dobrydnev v. Sec'y of Health & Human Servs*., 566 F. App'x 976, 982-83 (Fed. Cir. 2014)).)

4

Thereafter, the parties did engage in settlement discussions relative to a potential cellulitis-type injury. However, as of November 2022, the parties reported an impasse and a follow up status conference was held. (ECF No. 92.) I advised that I would permit petitioner the opportunity to testify, but "I encouraged petitioner's counsel to have a further discussion with petitioner regarding the considerations that go into weighing testimonial evidence against contemporaneous medical records and what that will likely mean for petitioner's ability to alter her litigative risk moving forward." (*Id*. at 1-2.) I also advised that, though I would permit another round of expert reports, "for all the reasons discussed in my prior Rule 5 Order, the contemporaneous medical records from the date of vaccination through early 2017, which are critical to the case, are such that additional expert testimony is less likely to be illuminating." (*Id.* at 1.)

A video fact hearing was then held on March 20, 2023, and the parties subsequently filed additional expert reports. (ECF No. 103 (Certified Transcript); ECF Nos. 106-07, 112, 116 (expert reports).) Thereafter, I issued a decision denying compensation. (ECF No. 122.) Of note, I found that petitioner's testimony was neither credible nor reliable. (*Id*. at 18-19.) Thus, I credited the contemporaneous medical record that placed onset of petitioner's shoulder injury in February of 2017, following her fall. (*Id*. at 21.) Therefore, "because Dr. Carr's opinion is based on factual assumptions that are not preponderantly supported, I do not credit his opinion as to vaccine causation." (*Id*.)

Thereafter, petitioner's current counsel moved for an award of final attorneys' fees and costs. (ECF No. 127.) However, respondent challenges whether there was a reasonable basis for the pursuit of petitioner's claim. (ECF No. 131, p. 11-12.) Petitioner, of course, disagrees and urges that the case maintained a reasonable basis throughout its prosecution. (ECF No. 134.)

### III.    Reasonable Basis

#### a.  Legal Standard

Under the National Childhood Vaccine Injury Act ("Vaccine Act") of 1986, even if a petitioner is denied compensation, the petitioner may still request reasonable attorneys' fees and other costs "incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 569 U.S. 369 (2013). This includes unsuccessful claims. *Cloer*, 675 F.3d at 1359. However, a special master retains discretion to grant or deny attorney's fees in unsuccessful cases. *James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) (citing 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362).

To determine whether there was a reasonable basis, special masters examine the *prima facie* petition requirements of section 300aa-11(c)(2) of the Vaccine Act. *See*

*Cottingham ex rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). In determining reasonable basis, the special master may evaluate the evidence under the totality of circumstances or the *Althen* factors. *Id.* at 1344; *Sheller v. Sec'y of Health & Human Servs.*, 121 F.4th 1301, 1306 (Fed. Cir. 2024). However, the Federal Circuit cautioned against relying on these approaches as a rigid analytic framework despite accepting them as consistent with the standard. *Sheller*, 121 F.4th at 1307 (warning, for example, that a rigid application of the *Althen* factors could "exceed what is required to establish a 'reasonable basis'").

Unlike good faith, which is subjective, a reasonable basis can be established only with objective evidence. *See Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). The quantum of objective evidence necessary to establish a reasonable basis is "lower than the preponderant evidence standard required to prove entitlement to compensation," but "more than a mere scintilla." *Cottingham*, 971 F.3d at 1346. A showing of "more than a mere scintilla" of evidence has in turn been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (quoting *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 n.3 (4th Cir. 2021). Significantly, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." *Cottingham*, 971 F.3d at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (2019)); *see also James-Cornelius*, 984 F.3d at 1379-80 ("E.J.'s medical records here provide factual support for Ms. James-Cornelius's reasonable basis claim even in the absence of an express medical opinion on causation.").

A claim can lose reasonable basis as the case progresses. *See generally Perriera*, 33 F.3d at 1377; *R.K.*, 760 F. App'x at 1012. In *Perriera*, for example, the petitioner's claim lost reasonable basis when the special master discovered that the expert opinion, which formed the basis of the claim, lacked sound medical support. 33 F.3d at 1376-77. Similarly, in *R.K.*, the petitioner's challenge to the special master's factual findings lacked a reasonable basis in light of the Federal Circuit's affirmance under a highly deferential standard of review and the special master's 219-page opinion weighing the evidence. 60 F. App'x at 1013.

b. The parties' arguments

Respondent does not concede that this petition ever had a reasonable basis; however, his motion response focuses primarily on the question of whether the first round of expert reports demonstrated that any reasonable basis that did exist dissipated at that time. (ECF No. 131, p. 11.) Respondent stresses that petitioner was advised during the Rule 5 conference that Dr. Carr's opinion regarding SIRVA was not reliably reached. (*Id*. at 12.) Moreover, although the undersigned indicated that an alternative claim based on petitioner's initial post-vaccination cellulitis was "theoretically conceivable, though not substantiated on the current record," Dr. Carr's report only sought to substantiate a SIRVA. (*Id*. at 11-12 (quoting ECF No. 79, p. 2).) Thus, respondent argues that reasonable basis was lost at the point at which his expert, Dr.

Cagle, pointed out the serious factual deficits of the SIRVA claim.  (*Id*. at 12.)  Respondent also argues that Dr. Carr's subsequent reports never remedied this issue, because the later reports were based on the same fatal deficiencies, and, indeed, the decision dismissing this case ultimately noted that Dr. Carr had misrepresented petitioner's medical history.  (*Id*. at 13-14.)  Nor, according to respondent, can the testimonial evidence in this case confer a reasonable basis for the petition given that the decision in this case ultimately assessed that the testimony was neither credible nor reliable.  (*Id*. at 14-16.)  Finally, respondent indicates that his willingness to engage in settlement discussions is not informative under the reasonable basis inquiry.  (*Id*. at 16.)  Respondent argues that to permit the full amount of attorneys' fees and costs sought would "incentivize the pursuit of other non-meritorious claims, which waste the parties' and Court's resources."  (*Id*. at 1.)

Petitioner argues, however, that Dr. Carr did set forth an opinion addressing the *prima facie* elements of petitioner's shoulder injury claim and the fact that respondent presented a contrary opinion does not, without more, demonstrate reasonable basis to be lacking.  (ECF No. 134, p. 5.)  Moreover, petitioner interprets the guidance provided during the Rule 5 conference as contemplating both a fact hearing and further expert opinions.  (*Id*. at 5-6.)

> Petitioner asserts that the witness testimonies from the fact hearing in this matter, coupled with the multiple affidavits, and Dr. Carr's expert reports that were filed as exhibits in support of Petitioner's vaccination injury claim, constitute sufficient objective evidence during the entire course of these proceedings to rise above the level of 'more than a mere scintilla of evidence' that is required to support her reasonable basis and allow Petitioner to be awarded the full amount of attorneys' fees and costs requested.

(*Id.* at 7.)

### c.  Analysis of reasonable basis

Resolving the parties' differences on reasonable basis first requires discussion of the content of the petition.  Afterall, reasonable basis is assessed as a matter of the *prima facie* petition requirements.  *See Cottingham*, 971 F.3d at 1345-46.  In this case, the petition first and foremost pleaded that petitioner had suffered a SIRVA.  (ECF No. 1, p. 1.)  However, the petition also included a description of petitioner's post-vaccination medical history that included her initial injection site reaction that was alleged to have "migrated to both sides of her neck."  (*Id*. at 1-2.)  And, while the petition specifically alleged SIRVA, it also more broadly alleged that "[t]he vaccine caused-in-fact Petitioner's symptoms and conditions."  (*Id*. at 1.)

Thus, when the departure of petitioner's first counsel prompted an award of interim attorneys' fees and costs, I found that the petition had a reasonable basis based upon "contemporaneous medical records from her treating physician observing her

alleged initial vaccine reaction (diffuse erythema over the deltoid, and myalgia) and opining that petitioner had an allergic reaction (or local cellulitis) related to her Prevnar vaccination." (ECF No. 41, p. 3; 2020 WL 1511103, at *2.) However, respondent's arguments on the instant motion relate primarily to the merits of petitioner's alleged SIRVA. (ECF No. 131.) Regarding the initial injection site reaction, respondent merely argues that "[t]he only vaccine injury that petitioner claimed and that her expert Dr. Carr opined about was SIRVA, meaning petitioner did not connect any of her other symptoms or conditions to her vaccination." (*Id*. at 11.) This is not persuasive. Although Dr. Carr did affirmatively assert that petitioner suffered a SIRVA (Ex. 23, p. 7), he did also explicitly opine that petitioner's initial erythema and swelling were caused by her vaccine injection (*Id.* at 6).

Respondent additionally argues that "neither expert concluded this injury lasted longer than six months, thus making that injury ineligible for compensation." (ECF No. 131, n. 4 (citations omitted).) However, this argument is also unpersuasive. As respondent notes, the primary purpose of Dr. Carr's report was to substantiate petitioner's SIRVA claim specifically. Accordingly, the fact that he did not address all the details of a separate injury is not very informative. As I otherwise explained in the Rule 5 Order, while petitioner had significant litigative risk with respect to whether sequela of the injection site reaction met the statutory severity requirement, there were medical record notations that could at least arguably support such a contention. (ECF No. 79, p. 2.) Contrary to respondent's argument, nothing in either Dr. Carr's or Dr. Cagle's initial reports contradicts or undermines the original assessment that the injection site reaction sustained a reasonable basis for the petition. (Exs. 23, A.)

However, the fact that petitioner had a reasonable basis relative to the injection site reaction does not mean that respondent's concerns are without merit given petitioner's clear focus on an alleged SIRVA injury that was flatly contradicted by the relevant medical records and never meaningfully substantiated. In contrast to the injection site injury, the alleged SIRVA (or even a shoulder injury caused-in-fact by vaccination) was never feasible. SIRVA involves an acute onset of shoulder pain occurring shortly after vaccination, accompanied or followed by reduced range of motion, for which no other condition or abnormality could explain the symptoms. 42 C.F.R. § 100.3(c)(10). In this case, however, petitioner was vaccinated in August of 2015. (Ex. 2, pp. 78-84.) Yet, as explained in the decision dismissing the case, despite treatment encounters for other conditions, the medical records contain no report of any shoulder injury, or any findings supportive of any shoulder injury, until about a year and a half later in February of 2017. Moreover, at that time, petitioner filled out an intake form on which she specifically documented that her left shoulder pain had been occurring for only two weeks and that it had been due to a fall. (Ex. 6, p. 17.) Further still, medical records created in the interim confirmed by physical exam that petitioner had full strength and range of motion of her shoulder prior to her fall. (Ex. 3, p. 47.)

Faced with such clearly contradictory medical records (including both the absence of contemporaneous evidence of a shoulder injury, as well as later records identifying a different source of injury), the fact that petitioner may be able to cite

8

isolated pieces of evidence favoring her view does little to suggest a reasonable basis for any SIRVA claim.  Several decisions by the Court of Federal Claims have explained that "a petitioner has no reasonable basis to bring a claim that is facially devoid – or insurmountably deficient, as the case may be – with respect to an element necessary to establish entitlement."  *Cottingham v. Sec'y of Health & Human Servs.*, 159 Fed. Cl. 328, 334 (2022), *aff'd*, No. 2022-1737, 2023 WL 7545047 (Fed. Cir. 2023); *see also Goodgame v. Sec'y of Health & Human Servs.*, 157 Fed. Cl. 62, 68 (2021) ("[A] claim that on its face . . . is not supported by the materials required by the Vaccine Act for a special master to be able legally to award compensation does not have a reasonable basis.").  Moreover, "a petitioner does not automatically satisfy the reasonable basis standard by producing 'more than a mere scintilla' of evidence in support of a claim."  *Cottingham*, 159 Fed. Cl. at 333 (quoting *Cottingham*, 971 F.3d at 1346); *McCoy v. Sec'y of Health & Human Servs.*, 178 Fed. Cl. 749, 757 (2025).  Thus, "it is not the case that isolated pieces of evidence potentially supportive of petitioner's claim will demonstrate a reasonable basis no matter what the totality of the record indicates."  *Kelly v. Sec'y of Health & Human Servs.*, No. 20-885V, 2023 WL 6889297, at *7 (Fed. Cl. Spec. Mstr. Sep. 22, 2023).

Petitioner argues that the fact witness testimony from the hearing constitutes objective evidence for purposes of assessing reasonable basis, noting in particular that the undersigned felt the hearing would assist in assessing petitioner's credibility.  (ECF No. 134, pp. 5-6.)  Petitioner is correct that competent lay testimony must be considered as objective evidence.  *James-Cornelius*, 984 F.3d at 1379-81.  However, such evidence is still subject to the fact finder's credibility determinations.  *McCoy*, 178 Fed. Cl. at 756-57 (explaining that "[b]ecause the Chief Special Master did not fail to consider the evidence presented, but instead found it to lack credibility and consistency, he did not abuse his discretion by misapplying the reasonable basis standard").  In this case, the decision dismissing this case explains that:

- "Petitioner's testimony is not reliable in that she demonstrated that she does not herself have a good recollection of the timeline of events."  2024 WL 4262961, at *13.

- "Additionally, petitioner offered denials of important facts that simply were not credible."  *Id*.

- "To accept petitioner's testimony, one would have to conclude that petitioner experienced a sustained pattern of care wherein her physicians willfully ignored her primary complaint of shoulder pain while simultaneously being attentive to, and treating, multiple other complaints she did not have."  *Id*. at *14.

- "The additional witness testimony does not help to resolve these issues. Though the witnesses were all uniform in asserting the single point that petitioner had shoulder pain shortly after vaccination, they did not

otherwise provide clear, consistent, or compelling testimony when providing further explanation."  *Id*.

Because petitioner's testimony was neither credible nor reliable, and because the other witness testimony did not actually help to resolve the contested factual issues in petitioner's favor, the fact hearing testimony does not meaningfully support a reasonable basis for petitioner's SIRVA claim.

Nor does the fact that the undersigned permitted the fact hearing mean that there was a reasonable basis for pursuing the hearing.  *See Hashi v. Sec'y of Health & Human Servs.*, No. 08-307V, 2016 WL 5092917, at *12 (Fed. Cl. Spec. Mstr. Aug. 25, 2016) (explaining that "the fact that Special Master Vowell agreed to conduct a hearing, requested by Petitioners, concerning Petitioners' 'significant aggravation' claim, does *not* mean that there was a reasonable basis for Petitioners to request and pursue that hearing.  When a petitioner's counsel requests a hearing concerning an issue, representing to the special master that there is a reasonable basis for the petitioner's position concerning the issue, the special master usually cannot know *ahead of the time of the hearing* whether there is, in fact, a reasonable basis for the claim to be presented at the hearing.").  Petitioner stresses that the undersigned felt it necessary to assess petitioner's credibility (ECF No. 134, pp. 5-6), but this was in the context of already suspecting that "her medical records suggest reason to doubt her credibility as a historian" (ECF No. 79).  What I advised, in fact, was that further expert reports would not be productive without resolution of petitioner's questionable factual allegations.  (*Id*.)  Moreover, I had previously "advised petitioner's counsel that, upon my review of this case, the medical records do not, without more, support petitioner invoking a SIRVA injury due to the post-vaccination evidence [of] cellulitis, cervical radiculopathy, and her traumatic fall."  (ECF No. 55, p. 1.)  I further explained that "[i]f this case is to proceed, petitioner will need to grapple with the fact that all of these conditions and circumstances are reflected in the medical records."  (*Id*.)

Finally, I note that Dr. Carr's reports also do not provide a reasonable basis for petitioner's pursuit of her SIRVA allegation.  As the decision dismissing this case explained, "Dr. Carr asserts without substantiation that petitioner's initial vaccine reaction included left shoulder pain and weakness beyond her initial cellulitis, seeming to merely conflate petitioner's diagnosis of an allergic reaction with the presence of a shoulder injury."  2024 WL 4262961, at *14.  In fact, I concluded that Dr. Carr's interpretation of petitioner's September 9, 2015 emergency department record represented "a complete inversion of petitioner's actual presentation."  *Id.*  "Thus, because Dr. Carr's opinion is based on factual assumptions that are not preponderantly supported, I do not credit his opinion as to vaccine causation."  *Id.* at *15.

In light of all of the above, I conclude that while petitioner had a reasonable basis throughout the pendency of this case for the allegation of an injection site reaction as included in her petition, she did not at any point have a reasonable basis to pursue the SIRVA allegation also included in her petition.  Therefore, I find that the reasonable basis for the substantive actions taken in this case effectively dissipated on December

7, 2022, the date that petitioner filed a status report confirming she would litigate her SIRVA claim to resolution in lieu of informally resolving her injection site reaction claim. (ECF No. 93.)  Subsequent to foregoing settlement of her injection site claim, the only argument petitioner advanced in seeking a ruling in her favor was that she suffered a SIRVA or SIRVA-like injury contemporaneous to her August 20, 2015 vaccination.[3] (ECF Nos. 109, 120.)

## IV.    Amount of the Award

By my calculation, from December 8, 2022, the day after petitioner stopped discussing her injection site claim, through January 19, 2024, the date of petitioner's final reply brief urging her SIRVA claim, petitioner's counsel and colleagues at his former firm of Sands Anderson, P.C., billed $82,626.10.  (ECF No. 127-5, pp. 21-30.) Petitioner's request for attorneys' fees and costs is therefore reduced by that amount because petitioner did not have a reasonable basis for the SIRVA claim pursued during that period.[4]  However, I do not find it practicable to attempt to parse counsel's efforts prior to this period as between the two types of claims at issue.  Additionally, I will allow counsel's billing subsequent to January 19, 2024, because it relates to actions that were required after dismissal, such as advising petitioner as to the court's decision and preparing attorneys' fees and costs, which were not specific to prosecuting petitioner's alleged SIRVA.  *Accord Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 8 (2017) (remanding to the special master to separately consider fees and costs associated with winding down the case after reasonable basis was lost).  Based on my review, the remaining hours billed throughout the pendency of the case, both before and after the above-discussed period, are reasonable.  The requested hourly rates are also largely consistent with what counsel has previously been awarded.  However, the requested hourly rate of $563 for work performed by Mr. Rodriguez in 2025 exceeds what counsel has previously been awarded.  *Coriale v. Sec'y of Health & Human*

---

[3] I stress, however, that the end of settlement discussions represents the turning point for reasonable basis, not because petitioner declined to settle her claim, but because from that point forward she opted to continue on the basis of SIRVA only, which lacked a reasonable basis.  Conversely, I also note that respondent did specifically argue that his willingness to engage in settlement discussions did not in itself provide a reasonable basis for the case.  (ECF No. 131, p. 16.)  This is true.  However, the point here is not that the settlement discussions established a reasonable basis, but that there was a reasonable basis to support engaging in the settlement discussions.

[4] Moreover, even if one felt the fact of the injection site reaction claim otherwise conferred a reasonable basis for any and all activity in the case, I would still conclude that the hours spent during this period were not reasonably undertaken given how obviously infeasible the SIRVA claim was.  *Accord Liu v. Sec'y of Health & Human Servs.*, No. 10-55V, 2020 WL 1023582 (Fed. Cl. Spec. Mstr. Jan. 30, 2020) (finding on remand that petitioners had a reasonable basis to pursue a cardiac arrhythmia theory but that time spent in pursuit of an unsubstantiated alternative theory based on cerebral edema was not reasonably undertaken); *D.G. v. Sec'y of Health & Human Servs.*, No. 11-577V, 2020 WL 3265015, at *3-4 (Fed. Cl. Spec. Mstr. May 22, 2020) (reducing fees significantly where "[s]imply culling specific objectionable billing entries . . . does not speak to the broader question of whether all or most of the work performed in this case was reasonably undertaken" and explaining that despite a "protracted" and "perplexing" procedural history the special master's first substantive orders had "accurately identified and predicted the central theme of the dismissal decision ultimately rendered four years later" (emphasis omitted)).

*Servs.*, No. 24-0328V, 2026 WL 473150, at *1 (Fed. Cl. Spec. Mstr. Jan. 16, 2026). This results in a reduction of $228.80.

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). In this case, $2,451.73 of the requested costs stem from the fact hearing held in this case, which I concluded had no reasonable basis.[5] Accordingly, these costs are not reimbursed. And, of course, because Dr. Carr's reports were submitted in service of petitioner's SIRVA allegation, the idea that the cost of those reports was reasonably incurred is suspect. Nonetheless, I will allow reimbursement for Dr. Carr's first report, both because respondent did not object to reimbursement of this report (arguing reasonable basis was lost afterward) and also because, though Dr. Carr was not ultimately successful in presenting his views, it is less clear that Dr. Carr's first report can be strictly isolated to petitioner's alleged SIRVA, rather than the claim for which petitioner did maintain a reasonable basis, given that he did acknowledge the initial injection site reaction and at least attempted to grapple with the fact of petitioner's February 2017 fall. However, Dr. Carr's second and third reports, which were filed after December 7, 2022, both specifically seek to conform petitioner's presentation to the SIRVA requirements and are therefore not reimbursed. (Ex. 35 (discussing each of the four SIRVA QAI criteria); Ex. 52 (opining petitioner's symptoms are "a viable initial SIRVA type injury")). Dr. Carr billed $4,200.00 for preparation of his second report and $2,250.00 for this third report. (ECF No. 127-4, pp. 27, 40.) I find the remainder of the requested costs to be reasonable. Accordingly, attorneys' costs are reduced by a total of $8,901.73.

Recognizing that this decision has reduced attorneys' fees in this case substantially, I am mindful that awards of fees and costs in unsuccessful cases are meant to ensure that claimants under the Vaccine Act have "readily available a competent bar to prosecute their claims." *Sheller*, 121 F.4th at 1305 (quoting *Cloer*, 675 F.3d at 1362). Also important, however, is the fact that "counsel's duty to zealously represent their client does not relieve them of their duty to the court to avoid frivolous litigation." *Perreira*, 33 F.3d at 1377. In this case, petitioner did have able representation with respect to the claim for which her petition had a reasonable basis, culminating in an offer of settlement that was ultimately rejected by petitioner, and her counsel has been fully compensated for that work. However, as demonstrated by the procedural history above, counsel also had ample notice of the likelihood that petitioner's SIRVA claim had no reasonable basis and nonetheless prolonged litigation of this case unreasonably in pursuit of that claim. Accordingly, the degree of the reduction in fees in this case is informed by the specific facts and circumstances at issue and should have no chilling effect on the availability of counsel in the program more generally. Afterall, it has long been understood that "an attorney should use

---

[5] Specifically: $514.69 for a meeting space rental; $583.86 for lodging; $525.31 for milage reimbursement; $74.40 for tolls; $126.47 for meals, and $627.00 for the transcript. (ECF No. 127-5, p. 33.)

reasoned judgment in determining whether to accept and pursue a claim." *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993).

## V.      Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 300aa-15(e).  Based on the reasonableness of petitioner's request, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs.

**Accordingly, the undersigned awards a lump sum of in the total amount of $82,386.02 as follows:**

- **A lump sum of $7.85, representing petitioner's out of pocket expenses, to be paid through an ACH deposit to petitioner's counsel of record, Ramon Rodriguez, III's IOLTA account for prompt disbursement; and**

- **A lump sum of $8,283.60, representing attorneys' fees and costs incurred by Siri & Glimstad, LLP, to be paid through an ACH deposit to petitioner's counsel of record, Ramon Rodriguez, III's IOLTA account for prompt disbursement; and**

- **A lump sum of $74,094.57, representing attorneys' fees and costs incurred by Sands Anderson, P.C., to be paid through an ACH deposit to petitioner's counsel of record, Ramon Rodriguez, III's IOLTA account for prompt disbursement.**

The clerk of the court shall enter judgment in accordance herewith.[6]


**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.